IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DERRICK DIRTON

      Plaintiff                                  *

  v                                             *         Civil Action No. RDB-09-1001

STATE OF MARYLAND, *et al*.        *

      Defendants                    *

                                            ***

**MEMORANDUM OPINION**

Pending is Defendants' Motion to Dismiss or for Summary Judgment. Paper No. 21. Also pending is Defendants' Motion to Strike Amended Complaint and Plaintiff's reply thereto. Papers No. 27 and 28. Although Plaintiff was advised of his right to file a response in opposition to Defendants' motion and of the consequences of failing to do so, he did not oppose the motion. Paper No. 22. Rather, Plaintiff filed an Amended Complaint. Paper No. 26. For the reasons that follow, the Court will, by separate Order, grant Defendants' Motion for Summary Judgment and Motion to Strike the amended complaint.

**Background**

Plaintiff alleges Defendants failed to provide him with administrative remedy procedure (ARP) forms, making exhaustion of administrative remedies before filing this complaint impossible. Paper No. 1 at p. 1. He does not state who is responsible for denying access to the forms. He states he has a seizure disorder, a learning disability, and mental health issues. *Id*. at p. 2. He further alleges that he was assaulted on January 28, 2009, by Officers Bennett and

Qpen[1] while he was in a holding cell on C-Wing. *Id*. at p. 3  He states the officers hit him in the mouth, back, and head, and tried to break his finger. *Id*.  He claims the assault lasted for 10 minutes and he was handcuffed the whole time. *Id*.  When the assault was over Plaintiff was warned that they would break something more than his hand if he wrote another officer up again. *Id*.  He further alleges that Sergeant Speir denied his request for medical treatment and assisted in holding Plaintiff's handcuffs in an attempt to break his hand. *Id*.

On February 9, 2009, Plaintiff claims Officers McMillan, Soltas and Rodeheaver assaulted him as he returned from outside recreation.  Paper No. 1 at p. 4.  He states McMillan threw him against a wall while escorting him up a flight of stairs, bent his finger in an attempt to break it, and hit him in the mouth when he complained.  *Id*.  Plaintiff claims another inmate, Antoine Belton, was on the stairs when the assault took place.  *Id*.  Plaintiff states that during the assault, McMillan mentioned that Plaintiff wrote an ARP regarding correctional officers on January 6 and 28, 2009.  When Plaintiff told McMillan he was hurting his hand, McMillan punched him in the mouth and told him to stop talking. He states as they proceeded to Plaintiff's cell, McMillan punched Plaintiff in the back repeatedly, saying 'the video camera can't see this.' *Id*.  He claims that although there was blood coming from a gash in his mouth, he was denied medical treatment.  *Id*.  McMillan then closed Plaintiff's cell door and called for Sergeant Baker.  *Id*.  Plaintiff stood by his door waiting for Baker.

Plaintiff states that Officers King, Youder, N. Soltas, and W. Rodeheaver came to the cell along with Baker.  *Id*.  Plaintiff claims the officers threatened him, saying they would hurt him if he came out of the cell. *Id*. at p. 5.  Plaintiff alleges that when his cell door was opened,

---

[1] Service was never accepted on behalf of "Qpen" because no one by that name works at North Branch Correctional Institution where the incident is alleged to have taken place.  Paper No. 21 at p. 2.

2

Rodeheaver, McMillan and Soltas hit him in the head and mouth, threw him down, and kicked him. When they were done, they walked Plaintiff to the cell door to take his handcuffs off. The officers, including Baker, denied him medical treatment. He claims the assault was in retaliation for filing documents in court seeking injunctive relief and a transfer out of NBCI. *Id*.

Plaintiff claims on March 19, 2009, Defendant Haferkamp, a psychology associate, failed to provide inmates with prompt needed psychiatric care. Paper No. 1 at p. 12. He further alleges that Haferkamp and Dr. James Holwager refused to help him with learning problems even though he participates in the Quality of Life program. *Id*. He claims they failed to secure a special education teacher to help him; provided only 10 minutes psychotherapy; allowed him to be abused by correctional officers; and failed to protect him from abuse by correctional officers. *Id*.

He alleges that on March 27, 2009, correctional officers walked Department of Public Safety and Correctional Services (DPSCS) employee Barbara Newlon to his cell where he explained he has a seizure disorder and was being denied a seizure helmet. Paper No. 1 at p. 10. He alleges the seizure helmet he had was broken and "cut up" by officers on February 9, 2009. *Id*. Plaintiff explains he has seizures two to three times a week and hits his head on the floor and walls when they occur. *Id*. Plaintiff states that when he has seizures medical staff are not always called. He states he told Newlon about the officers' behavior and their failure to provide medical attention when requested. He claims he received a letter from Newlon advising that a seizure helmet was ordered for him on March 11, 2009, but it was on back order and would be delivered in May. *Id*. Plaintiff also complained to Newlon that he is cuffed behind his back and assigned to a top tier, despite his seizure disorder. *Id*. at p. 11. He told Newlon that correctional officers

are permitted to stay in the room during medical visits, in violation of Division of Correction Directives (DCD).

On April 8, 2009, he claims Officers Karbaugh, Lewis and one unknown officer came to his cell claiming they were going to do a body search, then assaulted him by punching and kicking him. Paper No. 1 at p. 6. He states the officers punched and kicked him, and carried him to the stairs. *Id*. Plaintiff claims he blacked out for 10 minutes and after he regained consciousness, the officers walked him to a holding cell. Plaintiff alleges he talked to the officers for 10 or 15 minutes, requesting medical treatment for injuries to his mouth, leg, and back pain, but was instead subjected to a body search. *Id*. He claims that immediately following this incident he was transported to court where he told Chaplain Brown what had occurred. Brown called the prison to speak with Barbara Newlon about obtaining medical care for Plaintiff upon his return. *Id*

After returning from court, Plaintiff claims Officers Kalbaugh, Portmess, Sergeant Smith, and an unknown officer denied him medical treatment. *Id*. at p. 7. He further claims that Sergeant Thomas, who worked the following shift, also denied him medical treatment. He claims he had seizures on April 8 and 9, and was denied medical treatment by Officers Portmess and Karbaugh, Sergeant Smith, and Nurses Africa and Autumn. *Id*.

Plaintiff's complaint is made under oath. Paper No. 1 at pp. 12 and 13.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

4

> issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**Analysis**

Plaintiff has failed to oppose Defendants' Motion to Dismiss or for Summary Judgment. He has instead filed additional claims against additional prison personnel concerning his medical care and an alleged denial of psychiatric care spanning from February 28, 2009 through October 23, 2009. Paper No. 26. He includes names of 37 officers and medical personnel, some of whom were served in this case, whom he alleges participated in denying his medical care. *Id*. at p. 2. Defendants oppose the amended complaint and move to strike the additional claims pursuant to Fed. R. Civ. Proc. 15(a)(1) and (2).[2] Paper No. 27. Defendants' motion shall be granted for the reasons raised therein. Plaintiff may raise the new claims in another case.

<u>Excessive Force</u>

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 559 U.S. __, Slip Op. No. 08-10914 (Feb. 22, 2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation. Nonetheless, if force is

---

[2] Plaintiff's opposition to the Motion to Strike simply reiterates his claims that he is not receiving mental health care and should be transferred to Patuxent or Clifton T. Perkins. Paper No. 28.

applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

Defendants deny Plaintiff's allegations of excessive force and Plaintiff fails to refute the denial. Paper No. 21 at Ex. G – P. Defendants state the January 28, 2009, incident involved Officer Bennett escorting Plaintiff to a cell to be strip searched when he became belligerent because he claimed there was urine on the floor. *Id*. at Ex. G. Bennett asserts Plaintiff began saying he was going to accuse correctional staff of abusing him; therefore, Bennett escorted Plaintiff to a different cell where the search could be monitored on video surveillance. *Id*. Plaintiff was then strip searched without incident and returned to his cell unharmed. *Id*. Plaintiff was not denied needed medical care because he was not injured or harmed in any way. *Id*. at Ex. G and H. Defendants deny that Plaintiff even requested medical attention or claimed he was abused or harmed in any way. *Id*. Plaintiff has failed to come forward with evidence refuting Defendants sworn statements regarding this incident.

On February 9, 2009, Defendants admit there was an incident involving use of force which was required due to Plaintiff's refusal to relinquish his handcuffs. *Id*. at Ex. J. McMillan escorted Plaintiff to his cell and upon entering the cell, Plaintiff stated to McMillan, "fuck you, you ain't getting these cuffs back." *Id*. McMillan ordered Plaintiff to place his hands through the slot in the cell door, but he refused to comply with the order. Thus, Baker, Soltas, and Rodeheaver joined McMillan at Plaintiff's cell door and again ordered him to put his hands through the slot. He again refused to comply. Plaintiff's cell door was opened on Baker's orders. McMillan, Rodeheaver and Soltas went into the cell and Soltas placed a tether on the cuffs which was used to lead Plaintiff to the cell door. McMillan unlocked and removed the

cuffs; the slot was closed and no further incidents occurred. *Id*. Defendants state Plaintiff was not harmed during the use of force. Plaintiff has failed to refute Defendants' version of events occurring on February 9, 2009. The need for force presented by Plaintiff's recalcitrance, as balanced against the amount of force used, weighs against a finding that Defendants engaged in unconstitutional conduct.

Defendants state that the incident alleged to have occurred on April 8, 2009, never happened. *Id*. at Ex. N,O and P. Plaintiff does not come forward with evidence to refute the denial, thus Defendants are entitled to summary judgment on this claim.

## Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Medical records indicate that Plaintiff complained of pain in his hand caused by banging on his cell door. Paper No. 27 at Ex. C, pp. 4, 16 and 18. Two x-rays were ordered for Plaintiff's hand and revealed no deformity or fracture. *Id*. at pp. 12 and 18. On April 10, 2009, two days after Plaintiff claimed he was assaulted and denied medical care, he was seen by a nurse. He complained of discomfort in his right shin and asked for his nails to be cut. *Id*. at pp. 42 – 43. At that time Plaintiff appeared to be in no distress and was able to bear his full weight; he made no mention of an assault by correctional officers occurring two days before as claimed in the complaint. *Id*. Repeated complaints of pain in his right hand resurfaced in August of 2009, when Plaintiff claimed his hand was injured in the feed up slot on his cell door. Repeat x-rays showed no fracture to his hand. *Id*. at p. 109. Thus, the evidence presented by Defendants indicates that Plaintiff did not suffer a serious injury to his hand which was ignored. Rather, the evidence suggests that his complaints regarding his hand were addressed appropriately.

Plaintiff's claim regarding his seizure helmet is simply that it was damaged and he needed another one. Plaintiff's seizure cap was in fact damaged and a new one was ordered for him even though the damaged helmet was still usable. Paper No. 26 at Ex. C, pp. 18 and 25. Plaintiff received a new seizure helmet on April 14, 2009. *Id*. at p. 44. Thus, Plaintiff, by his own account, was required to use a damaged helmet from February 9 through April 14, 2009. Defendants state that although the helmet was damaged, it was in workable condition. While Plaintiff states that he needs the helmet to protect his head during seizures which occur two to three times a week, he does not claim he was injured because he could not wear the helmet. In addition there is no evidence that the delay in replacing the damaged helmet was unreasonable or willful. Defendants are entitled to summary judgment in their favor on the medical claims.

<u>Psychiatric Care</u>

There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977).  A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.*  The *Bowring* Court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id.* at 48.

Plaintiff repeatedly claims that staff at NBCI are incapable of treating his mental health issues and that he should be transferred to Patuxent or Clifton T. Perkins for treatment.  Paper No. 1 and 28.  He does not specify what his mental health problems are, but Dr. Holwager, Chief Psychologist at NBCI, states under oath that Plaintiff has no clear serious mental health issue. Paper No. 26 at Ex. D.  Holwager states that it is the professional opinion of psychology staff that Plaintiff simply suffers from anxiety related to being housed in the prison's general population. *Id.* at p. 3. He further claims that he offered Plaintiff a chance to stay in the Special Needs Unit (SNU), designated housing for mentally ill prisoners, believing a brief stay there would assist in developing an Axis I diagnosis and help Plaintiff to work on his anxiety problems. Plaintiff declined the housing assignment.  Although Plaintiff was referred to see a psychiatrist (Dr. Kale), he refused to keep the appointment.  When Plaintiff was seen by Dr. Kale

on March 13, 2009, he was observed as irritable, but negative for anxiety. *Id.*  In addition, Plaintiff was seen on a regular basis by Haferkamp and Holwager. *Id.* at pp. 5—67.  There is no evidence that Plaintiff suffers from a serious psychiatric illness that has not been appropriately addressed by staff.  Defendants are entitled to summary judgment on this claim.

Access to Courts

The Prison Litigation Reform Act ["PLRA"] requires a prisoner to exhaust administrative remedies before filing suit in federal court.  Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Thus, the exhaustion provision plainly extends to the allegations raised by Plaintiff and, upon proof that he has failed to exhaust a claim, Defendants are entitled to dismissal of the unexhausted claims.  *See Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674, 681 (4th Cir. 2005).  Plaintiff's allegation that he is denied access to forms used to file an administrative remedy procedure request (ARP) is a claim that he is denied access to courts.  The tools required by *Bounds v. Smith*, 430 U. S. 817, 821 (1977) "are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of

their confinement." *Lewis v. Casey*, 518 U. S. 343, 355 (1996). Impairment of other capacities to litigate are consequential to incarceration and pass constitutional muster. *Id*.

Defendants assert that far from being denied access to the administrative remedy procedure, Plaintiff managed to file 35 separate ARPs between September 22, 2008 and September 9, 2009. Paper No. 27 at Ex. A. All ARPs submitted by Plaintiff were submitted on pre-printed forms provided by the prison administration. During investigations into Plaintiff's allegations of assault, he refused to speak to Lt. Werner, who interviewed and obtained statements from the officers who were allegedly involved in the assaults occurring on January 28 and February 9, 2009. *Id*. The fact that Plaintiff may have been denied an ARP form on one or another occasion does not constitute an impermissible burden on his access to courts. Plaintiff fails to refute the evidence; thus, Defendants are entitled to summary judgment.

## Conclusion

Upon review of the undisputed material facts, the Court concludes that Defendants are entitled to summary judgment on all claims raised. A separate Order follows.

March 4, 2010                               **/s/**_____
Date                                             RICHARD D. BENNETT
                                                     UNITED STATES DISTRICT JUDGE